**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald D. FERGUSON,**
**Defendant–Appellant.**

No. 89–2930.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1990.
Decided June 19, 1991.

Julia E. Getzels, Barry R. Elden, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Carol A. Brook, George T. Stephenson, Office of the Federal Public Defender, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr. and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant Ronald D. Ferguson was convicted of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). He alleges that the prosecutor's use of peremptory strikes to remove blacks from the jury violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Ferguson also appeals the enhancement of his sentence under 18 U.S.C. § 924(e). We affirm.

During the afternoon of April 28, 1988, two Chicago police officers responded to a call involving a disturbance outside a game

room. When the officers arrived on the scene they observed Ferguson placing something under the seat of the car in which he was sitting. A search of the car revealed a revolver under the passenger seat where Ferguson had been sitting and another revolver under the driver's seat. Ferguson was then indicted for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and the government filed a timely notice that it would seek an enhanced sentence under 18 U.S.C. § 924(e) in the event of Ferguson's conviction. The jury found Ferguson guilty of felonious possession of a firearm and the trial judge imposed the minimum mandatory fifteen-year sentence prescribed by § 924(e).

We first address Ferguson's argument that the government's use of peremptory strikes constituted a violation of *Batson.* The Supreme Court held in *Batson* that the Equal Protection Clause grants defendants the right to be tried by a jury selected in a nondiscriminatory manner. 476 U.S. at 85–86, 106 S.Ct. at 1716–17. Under *Batson,* a defendant may establish a prima facie case of purposeful discrimination by showing that he is a member of a cognizable racial group, that the prosecutor has exercised peremptory strikes to remove venire members of the defendant's race,[1] and that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. at 1723.

Once the defendant establishes a prima facie case, the burden shifts to the government to provide a neutral explanation for its challenge to black jurors. *Id.* at 97, 106 S.Ct. at 1723. Although the prosecutor's explanation must be "clear and reasonably specific" and set forth "legitimate reasons," it need not "rise to the level justifying exercise of a challenge for cause." *Id.* at 97–98, 106 S.Ct. at 1723–24. The Su-

preme Court also recognized that the trial judge's findings in this context will involve questions of credibility and those findings should be given "great deference." *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21. This circuit will therefore uphold a district court's findings that the government's challenges were based on nondiscriminatory criteria unless those findings are clearly erroneous. *United States v. Briscoe,* 896 F.2d 1476, 1487 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137.

The government used four out of six potential challenges to strike black jurors, one to strike a hispanic, and left one strike unused. One alternate strike was used by the government to strike a white juror. Citing *Batson,* defense counsel objected to the strikes and argued that the government was using its peremptories to remove the prospective jurors because of their race. Finding that Ferguson had established a prima facie case of discrimination, the district court required the government to explain its reasons for exercising the challenges. Although the government does not concede on appeal that Ferguson established a prima facie case of discrimination, we need not dwell on this issue since the district court was correct in its conclusion that the government's reasons for challenging the hispanic and black jurors were not racially motivated.

The government explained that the reason for striking Wyatt Kirk, a black male, was his youth and unemployment. Elizabeth Armstrong, a black female, was challenged due to her unemployment. Jose Villanueva, a hispanic male, testified during *voir dire* that he had been arrested for DUI and his license was suspended for one year. The government cited Villanueva's unemployment and arrest as reasons for striking him from the jury. Ernest King, a black male, testified that his employment

---

1. The "same race" requirement of *Batson* was recently abolished in *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in which the Supreme Court held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." *Id.* 111 S.Ct. at 1366. Ferguson is a black man and he challenges the strikes against four black jurors and one hispanic juror. We evaluated the peremptory strike of the hispanic juror under the *Batson* criteria and therefore we need not address the applicability of *Powers* to this appeal.

was in "import and export world trade, as well as income tax and business consulting." He also testified that he had been falsely accused of a crime, but was acquitted. In addition, his brother had recently been murdered in Miami. In light of King's experience with the criminal justice system and his ambiguous employment status, the government exercised a peremptory challenge against him. Patricia Miller, a black female, was stricken because of her youth.

 The gravamen of Ferguson's argument is that a prospective juror's youth and unemployment are not credible criteria for exercising peremptory challenges, but are merely pretexts for purposeful discrimination. Ferguson's brief does not reveal the specific peremptory strikes he finds objectionable. Although a pattern of strikes against black jurors may be a factor in determining whether a defendant has established the initial prima facie case of discrimination, once the burden shifts to the government the strikes are evaluated on an individual basis and the prosecutor is required to give "clear and reasonably specific" racially neutral explanations for the challenges. *Batson*, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20. It is the striking of a single black juror for racial reasons that invokes the shelter of the Equal Protection Clause, even though other black jurors are impanelled.[2] *Briscoe*, 896 F.2d at 1489; *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir.1987); *United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986). We will therefore examine each peremptory strike to determine whether the district court correctly found that the government did not engage in purposeful discrimination.

 It is not clear whether Ferguson challenges the peremptory strikes exercised against prospective jurors Villanueva and King. Nevertheless, the government's reservations concerning both Villanueva and King were well-founded in light of their previous experience with the criminal justice system—both men had been the subject of criminal prosecution. Prior en-

counters with the criminal justice system which might cause a juror to be hostile toward the government have been upheld as racially neutral explanations. *Briscoe*, 896 F.2d at 1488; *United States v. Roan Eagle*, 867 F.2d 436, 442 (8th Cir.), *cert. denied*, 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989). In addition, the district court found that King's evasive response concerning his employment "did not lend itself to great confidence in his ability to be a fair and impartial juror...." We therefore find that the government's peremptory challenges to jurors Villanueva and King were properly exercised.

 Ferguson's primary argument is that youth and unemployment are merely pretextual, and therefore insufficient as racially neutral explanations for the exercise of peremptory strikes under *Batson*. The district court found that Kirk was young and unemployed, Armstrong was unemployed and Miller was young. Although these reasons may appear insubstantial, they need not approach the level justifying a challenge for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Youth and unemployment have been held sufficiently race-neutral to support the government's use of peremptory challenges. *See United States v. Clemons*, 843 F.2d 741, 748 (3d Cir.) (challenge to young, single prospective juror in drug prosecution did not violate *Batson*), *cert. denied*, 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988); *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988) (exclusion upheld of young, unemployed prospective juror); *United States v. Harrell*, 847 F.2d 138, 139 (4th Cir.) (challenge to unemployed juror upheld), *cert. denied*, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988).

In light of the deference accorded the district court's determinations in jury selection challenges, *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 27, we find that the trial judge's conclusion that the strikes were not exercised for any "improper racial reason" does not violate the principles of *Batson*. In so holding we are not, how-

---

**2.** The jury ultimately impanelled at Ferguson's trial included five black jurors.

ever, announcing a general rule that young or unemployed people are unfit for jury service, as in some circumstances they may substantially contribute to a balanced and fair jury for all parties. However, the district judges are able and qualified to pass on the good faith and credibility of the government's exercise of peremptory challenges under *Batson.* The record does not disclose the ages of the persons challenged for their youth, which would have been helpful, but the impartial trial judge was there and observed the prospective jurors, their maturity and their demeanor. Under the circumstances of this particular record, although the government's reasons are not strong, we cannot say that the district court's findings were clearly erroneous.

■ Ferguson also challenges the enhancement of his sentence under the "career criminal" provisions of 18 U.S.C. § 924(e) which mandate a minimum sentence of fifteen years for violations of § 922(g) by persons with three or more convictions for violent felonies.[3] Ferguson argues that two of the three prior convictions relied upon by the district court to enhance his sentence were based on guilty pleas that were obtained unconstitutionally. He also contends that the government should bear the burden of proving the validity of his guilty pleas.

In August 1977, Ferguson pleaded guilty in the Circuit Court of Cook County to an information charging him with burglary and armed robbery and he also pleaded guilty on a separate charge of armed robbery.[4] He asserts that a sentence enhancement under § 924(e) cannot be based upon these convictions because the underlying guilty pleas were not made voluntarily and

intelligently. The only evidence supporting this contention is Ferguson's own affidavit.

Ferguson alleges in his affidavit that he conferred with his court-appointed attorney only briefly regarding both cases. The hearing to enter his guilty pleas lasted only four to five minutes, according to Ferguson's affidavit, and the judge failed to explain his rights to him. Ferguson also alleges that he was unaware that he was being convicted of two armed robberies and one burglary. He believed he was being convicted of only one burglary and one armed robbery. No transcript of the 1977 plea proceedings exists because the court reporter died before transcribing his notes and Ferguson was unable to find someone who could transcribe them.

Ferguson contends that because the record of the plea proceedings in Illinois state court was inadequate, the guilty pleas are invalid and cannot be used for purposes of sentence enhancement. He relies on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), in which the Supreme Court held that a conviction based upon a guilty plea is invalid unless the defendant voluntarily and intelligently waives his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. Moreover, a waiver of these rights cannot be presumed from a silent record. *Id.* at 242, 89 S.Ct. at 1711–12. If Ferguson's convictions were the product of unconstitutionally obtained guilty pleas, under *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967), the convictions could not be used for sentence enhancement.

Contrary to Ferguson's assertion, once the government has shown that a defendant has three prior violent felony convic-

---

**3.** 18 U.S.C. § 924(e)(1) provides:

In the case of a person who violates § 922(g) of this title and has three previous convictions by any court referred to in § 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such a person shall be fined not more than $25,000 and imprisoned not less than 15 years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant probationary sentence to, such person

with respect to the conviction under § 922(g) and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

**4.** The third conviction upon which Ferguson's sentence enhancement was based involved a 1982 guilty plea to attempted murder. Ferguson does not contest the constitutional validity of that guilty plea and it is therefore not at issue in this appeal.

tions pursuant to § 924(e)(1), "the burden rests with the defendant to show that the conviction was unconstitutional." *United States v. Gallman*, 907 F.2d 639, 643 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). This circuit has set forth with specificity the procedure to be followed in analyzing, for purposes of sentence enhancement under § 924(e), the validity of an Illinois state court conviction that is based upon a guilty plea when no transcript is available. *United States v. Polk*, 908 F.2d 212 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990); *United States v. Dickerson*, 901 F.2d 579 (7th Cir.1990). In *Dickerson* we held that the absence of a transcript of the defendant's guilty plea hearing does not necessarily render the conviction invalid. 901 F.2d at 583. In affirming Dickerson's conviction, we held that "we investigate the custom, practice and law applicable to Illinois guilty pleas and if possible the particular court's practice to determine whether the plea was an intelligent and voluntary waiver of Dickerson's rights." *Id.*

Both *Polk* and *Dickerson* relied on Illinois Supreme Court Rule 402(a) as evidence of the custom and practice employed by Illinois courts in guilty plea proceedings. *Polk*, 908 F.2d at 214–15; *Dickerson*, 901 F.2d at 583. Rule 402(a), which was applicable at the time of both pleas challenged by Ferguson, provides:

> The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands ... that the defendant has a right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty[,] and ... that if he pleads guilty there will not be a trial of any kind so that by pleading guilty he waives the right to trial by jury and the right to be confronted with the witnesses against him.

*Dickerson* recognizes a "strong presumption" of constitutional validity in state judicial proceedings. 901 F.2d at 583.

■ The judgment of conviction may be used as additional evidence of the voluntary and intelligent nature of a defendant's guilty plea. *Polk*, 908 F.2d at 214; *Dickerson*, 901 F.2d at 583. Each of the certified statements of Ferguson's two challenged convictions state that "[t]he defendant, after having been fully advised of his rights and while represented by counsel, withdrew his plea of not guilty and entered a plea of guilty...." A guilty plea and the resulting conviction will be constitutionally sound if the defendant's awareness of his rights can be reasonably inferred from the custom and practice of the court. *Gallman*, 907 F.2d at 644.

Ferguson's only evidence, to refute the presumption of regularity accorded state judicial proceedings consisted of his own affidavit claiming that although he was represented by counsel and discussed his pleas with his attorney, the judge failed to explain his rights to him. Although Ferguson received fairly substantial sentences as a result of these convictions, he has never attacked them, either on direct or collateral appeal. In light of the paucity of evidence presented by Ferguson, we find that he has failed to meet his burden of demonstrating the invalidity of his 1977 convictions. Therefore, we hold that the district court properly concluded that Ferguson's convictions satisfied the conditions for sentence enhancement under § 924(e).

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

Although I defer to the view of the district judge who observed the three challenged jurors in serious question here (Kirk, Armstrong and Miller), I write separately to note what may be a significant deficiency in the statement of reasons for these three peremptory strikes. Unless we are to assume that youth and unemployment are universally plausible reasons for jury strikes, there should be some indication of a nexus between the crime charged and the characteristics of the challenged jurors. Peremptory strikes can still be pretextual if the prosecutor's reasons do not relate to an articulable concern about potential jury sympathy. The cases cited to support the thesis that youth and unemployment are acceptable grounds for per-

emptory strikes relate these characteristics to the subject of the trial. In *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988), the panel thought that unemployment may create sympathy with a defendant charged with bank robbery. In *United States v. Clemons*, 843 F.2d 741, 748 (3d Cir.), *cert. denied*, 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988), striking young, single jurors was found "logical in the context of a narcotics prosecution." In *United States v. Harrell*, 847 F.2d 138, 139 (4th Cir.), *cert. denied*, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988), the panel found it reasonable for a prosecutor to want educated, employed jurors for a bank robbery trial. In the case before us the charge is possession of a gun by a convicted felon. No reason has been advanced why youth or lack of a job should affect the impartiality of jurors with respect to this offense. Although I accept the district court's evaluation here, a nexus should ordinarily be a significant part of the rationale.