Bennie Mack Carter was charged in four separate indictments with robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975, and in a fifth indictment with attempted murder, in violation of § 13A-6-2 and § 13A-4-2, Code of Alabama 1975. The cases were consolidated for trial, and the jury found Carter guilty of four counts of robbery in the first degree and one count of attempted murder, as charged in the five indictments. The trial court then sentenced Carter to five concurrent 25-year terms of imprisonment. Four issues are raised on appeal.
 I
Carter contends that the trial court failed in contravention of §§ 15-19-1 and 15-19-2, Code of Alabama, to conduct an investigation or to hold a factual hearing before denying him youthful offender status.
The record reveals that Carter did not appear to object to the trial court's denial of youthful offender status at any time during the proceedings below. Because review by this court is limited to matters properly raised in the trial court, this issue, which is raised for the first time on appeal, is raised too late for review.
We note, moreover, that even had this issue been timely raised below, the record reflects that the trial judge denied Carter youthful offender status after conducting a hearing. A trial judge's actions are presumptively correct in the absence of a showing to the contrary. Gratton v. State, 456 So.2d 865
(Ala.Cr.App. 1984). Because Carter has presented nothing to substantiate his claim that the trial judge did not conduct a proper investigation prior to denying him youthful offender treatment and because there is nothing in the record to suggest that the hearing was not conducted in compliance with §§15-19-1 and -2, the minute entry recitation that a hearing was conducted should be accepted as true. Harper v. City of Troy,467 So.2d 269 (Ala.Cr.App. 1985).
 II
Carter contends that the trial court erred by failing to grant his motion pursuant to Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), based on the prosecutor's peremptory strike of a black woman from the venire allegedly solely on the basis of race.
The record reveals that the defense and the State each struck three blacks from the venire, leaving a total of six blacks sitting on Carter's jury. The record further reveals that after the jury had been struck, defense counsel stated that he believed that potential juror number 261, a black female, was struck for racial reasons. In support of his strike, the prosecutor responded:
 "MR. STOKESBERRY: Well, Your Honor, the State struck that lady because she's single, she lives in a retirement home, and I didn't think she was experienced as the other people and I wanted the other people more. Also, I'll say that I was going to strike Ms. Lewis for the same reason I struck Ms. Scott, but the Defense beat me to it. She's the only single person, only person that said she was single living in a retirement home and not employed. For those reasons I struck her."
The trial judge found the explanations given by the prosecutor to be sufficient. In Ex parte State, 539 So.2d 1074
(Ala. 1988), the Supreme Court stated:
 "In Batson the Supreme Court did not eliminate peremptory strikes altogether. It simply said that such strikes must not be used to discriminate on a racial basis. We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system *Page 1029 
are in a much better position than appellate judges to decide whether the truth has been stated."
Id. at 1075.
The reasons articulated by the prosecutor for striking potential juror Ward appear to be race-neutral. This juror, who resided in a retirement home, was obviously elderly. Elderly age has been held to be a sufficient race neutral reason for striking someone from the jury. Nesbitt v. State, 531 So.2d 37
(Ala.Cr.App. 1987). The prosecutor indicated, moreover, that he was going to strike another female for some of the same reasons as this potential juror but the defense struck the other woman first.
Based upon the reasons given by the prosecutor, which reasons were found to be race-neutral by the trial judge, Carter'sBatson motion was properly overruled.
 III
Carter contends that the trial court erred by failing to give his requested jury instruction on identification, which instruction, he argues, was not substantially and fairly covered in the court's oral charge.
A trial judge may properly refuse a requested jury charge where the charge has been sufficiently covered in the court's oral charge. Bogan v. State, 529 So.2d 1029 (Ala.Cr.App. 1988).
In the instant case, the trial judge in his oral charge substantially covered the charge requested by Carter. The trial court charged the jury on the question of identity as follows:
 "Now, involved in this case, ladies and gentlemen, was a question of identity. You all are familiar with the ups and downs of identification. You have to and you do and you will, you have to consider the possibility of human error or mistake and the probable likeness or similarity of objects, of persons. People — lots of times we walk down the street and say — you walk down the street and you think you saw someone you know. Come up to them and [say] hi or something and you find out you don't know them. I guess we all have been in that situation one time or another, I know I have, much to my embarrassment. But that's the way it happens and we've got to — that's just one of the elements that we must act on in considering the testimony as to identification. You must carefully consider these factors passing on the credibility of the witnesses, the weight you would attach to their testimony, and you must be convinced beyond a reasonable doubt as to the accuracy of identification by a witness."
Although the court's oral charge was not as detailed as Carter's requested charge, it covered the points needed by the jury to resolve any discrepancies in the identification evidence. Carter's requested charge, which was ostensibly based on federal jury instructions and federal case law, was extremely detailed and lengthy and might have tended to confuse the jury. Hence, because the trial court adequately covered the issue of identification in its oral charge, its refusal of Carter's requested charge on the same point of law was not error.
 IV
Carter contends that the evidence presented by the State was insufficient to support his convictions for robbery in the first degree and attempted murder because some of the victims failed to identify Carter as the perpetrator and because one of the victims could not positively identify him as the perpetrator at one point. We disagree.
In Fortier v. State, 515 So.2d 101 (Ala.Cr.App. 1987), cert.denied, 484 U.S. 1043, 108 S.Ct. 776, 98 L.Ed.2d 862 (1988), this court stated:
 "The defendant's final challenge to the sufficiency of the State's evidence — that none of the victims identified him as one of the assailants — is also unavailing. 'The failure of a victim to identify the accused affects the weight and credibility of the victim's testimony, which are questions for the jury.' Brown v. State, 488 So.2d 9, 11 (Ala.Cr.App. 1986); Johnson v. State, 453 So.2d 1323, 1328-29 (Ala.Cr.App. 1984). It is not indispensable to a conviction to have positive eyewitness identification of the accused. Identity may be established by *Page 1030 
direct or circumstantial evidence, Cummings v. State, 356 So.2d 779, 783 (Ala.Cr.App. 1978), and if there is enough evidence to permit the inference that the accused was the person who committed the crime then the State's case is sufficient, United States v. Darrell, 629 F.2d 1089, 1091 (5th Cir. 1980)."
Id. at 106.
In the case at bar, Patricia Couch, Linda Hill, David Garner, and David Phillips were accosted in an alley by two black males, one of whom was armed. The two black males demanded that the foursome give them their watches and that the ladies give them their purses and threatened to shoot them if they did not comply. Phillips turned around and the gunman shot Phillips in the chest. The other black male, who had been tugging at Couch's purse in an attempt to take it, ran when the shot was fired. The gunman also ran. Phillips was taken to the emergency room at University Hospital and was released nine days after surgery was performed.
Approximately one week after the incident, Couch was shown a photographic array, and she indicated that the perpetrator could be number three or number six, which was a photograph of Carter. Approximately three weeks later, Couch was presented with a second photographic array composed of different persons and a more recent photograph of Carter. Couch positively identified photographs number two, which was a photograph of Carter, as the perpetrator of the crimes. Approximately nine months later, Couch positively identified Carter as the perpetrator in a lineup at the county jail.
The fact that three of the victims could not identify Carter as the robber/attempted murderer did not affect the sufficiency of the State's evidence. One witness's positive identification of Carter as the perpetrator could establish his guilt as firmly as it would have been established by the testimony of all of the victims. Prince v. State, 392 So.2d 853 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 857 (Ala. 1981). The fact that Couch may have wavered in her identification of Carter as the perpetrator went to the credibility of her testimony, which was to be resolved by the jury. Johnson v. State, 453 So.2d 1323
(Ala.Cr.App. 1984).
We, therefore, hold that the testimony of Couch provided sufficient evidence identifying Carter as the robber/attempted murderer for the jury to convict him of the crimes.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.