627 So.2d 1030 (1993)
Ex parte Bennie Mack CARTER.
(Re Bennie Mack Carter v. State).
1910887.
Supreme Court of Alabama.
April 23, 1993.
Rehearing Denied June 4, 1993.
*1031 John A. Lentine of Sheffield, Sheffield, Sheffield & Lentine, P.C., Birmingham, for petitioner.
James H. Evans, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for respondent.
MADDOX, Justice.
We granted certiorari review in this case to examine one question: Is a Batson violation established if the defendant can show that one black veniremember was struck because of her race?[1] We affirm.
Bennie Mack Carter was indicted and was convicted on four counts of first degree robbery and one count of attempted murder. During his trial, after the voir dire examination, his counsel made a timely Batson challenge to one of the prosecutor's peremptory strikes:
"MR. LENTINE [defense attorney]:... Judge, I'm raising a Batson objection. As the court knows even one strike
"THE COURT: No, siree, not anymore. Not in my league. One strike will not do it anymore. Go ahead. Put the reason down.
"MR. LENTINE: As I understand United States v. Gordon, cited in [Ex parte] Branch, still made it clear that even one strike for racial reasons will constitute
"THE COURT: Well, I don't buy that. I don't think it's the law anymore. Of course it used to be. Anyway, you just state your reasons.
"MR. LENTINE: As to [juror No.] 261, [a] black female named D.W., she was in the very back. She was between two other black veniremembers. She was a resident of Fair Haven. She was single. There was absolutely no question that she did not answer any questions. There really was nothing put to her. She didn't answer one way or the other for either the defense or the State. I believe that she was struck [for] racial reasons. There's absolutely nothing to show why she was struck.
"THE COURT: That's D.W., Number 261.
"MR. LENTINE: Give me one moment to look at the others?
"THE COURT: Sure. I might say for the record, when the venire came down there were 55 percent whites. After that one lady was excused, there were 55 percent whites and 44 percent blacks on the entire venire of 32 people, I think it was 32.

"MR. LENTINE: I believe the one that came off was a black, C.O. I'm just checking out the rest of them.
"THE COURT: Yeah, that was the one I excused.
"MR. LENTINE: Yes, sir. I think my only objection will be to the one black juror D.W. I don't think that she gave any answers or made or had any facial movements or didn't seem to be displeased *1032 with the State or the defense, [and] she gave no outward appearance of either having knowledge of the location, [or] having knowledge of the parties. There was really no reason I can see other than [a] racial [reason] why she was struck. I object to her being stricken.
"THE COURT: Am I right or am I wrong in saying [that the] State struck three. I thought I had the Defendant with four [strikes]. Maybe I'm wrong. It's three.
"MR. STOKESBERRY [the prosecutor]: Three each. The venire is left with, I believe, six black people and seven non-blacks.
"THE COURT: That's right.
"MR. LENTINE: That's the way I have it, Judge.
"THE COURT: Do you want to give a reason for that one?
"MR. STOKESBERRY: Well, Your Honor, the State struck the lady because she's single, she lives in a retirement home, and I didn't think she was [as] experienced as the other people and I wanted the other people more. Also, I'll say that I was going to strike Ms. L. for the same reason I struck Ms. S., but the defense beat me to it. She's the only single person, only person in a retirement home and not employed. For those reasons I struck her.
"THE COURT: All right. I'll overrule your motion. I don't think there's discriminatory strikes when you end up with three blacks struck by each side and you end up withyou start out with a 55/44 percent, which is extremely good. You've got now one extra black. I think there's no sign of discriminatory strikes. I overrule it."
(R. at 101-05; emphasis supplied.)
The record clearly shows that the trial court erroneously concluded that a single instance of racial discrimination (i.e., the prosecutor using one peremptory strike in a racially discriminatory manner) is insufficient to establish a Batson violation. We hold that a single instance of purposeful racial discrimination in the use of peremptory strikes does violate Batson.
In Harrell v. State, 555 So.2d 263, 267 (Ala.1989) this Court cited United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), United States v. Hughes, 864 F.2d 78, 79 (8th Cir.1988), and United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir.1989), and stated:
"The trial judge has discretion in finding whether a prima facie case of purposeful discrimination has been proven. That finding is entitled to considerable deference on appeal. The trial judge must be sensitive, however, to the demands of equal protection of the laws. It has been stated that the removal of even one juror for a discriminatory reason is a violation of the equal protection rights of both the excluded juror and the minority defendant. Moreover, this is true even though blacks may be seated on the petit jury and there were valid race neutral reasons for striking other blacks from the jury."
(Emphasis supplied.) (Citation omitted.)
Also, recently, in Huntley v. State, 627 So.2d 1013 (Ala.1992), this Court stated: "Upon the exercise of the prosecution's first peremptory challenge to a black veniremember, a defendant is entitled to a Batson hearing." (Emphasis supplied.) Furthermore, other courts have stated the law similarly. See, e.g., United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987), vacated, rev'd and remanded in part on other grounds on reh., 836 F.2d 1312 (11th Cir. 1988), cert. dismissed, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988) (stating that "under Batson, the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors."); United States v. Battle, 836 F.2d 1084, 1086 (8th Cir.1987) (same); Tolbert v. State, 315 Md. 13, 19, 553 A.2d 228, 230 (1989) (stating, "A new trial will be mandated if any one of the peremptory challenges to black jurors was exercised with a discriminatory purpose, as the State will not be allowed `one free discriminatory strike.' Any violation requires a new trial."); United States v. Matha, 915 F.2d 1220, 1221 (8th Cir.1990) *1033 (stating, "It is a violation of the equal protection clause to strike even one black juror if the strike was made for a racial reason."); and United States v. Ferguson, 935 F.2d 862, 865 (7th Cir.1991) (stating, "It is the striking of a single black juror for racial reasons that invokes the shelter of the Equal Protection Clause, even though other black jurors are impanelled.").
Thus, a single instance of purposeful racial discrimination in the use of peremptory strikes can establish a prima facie case under Batson. The trial court, therefore, incorrectly concluded that the striking of just one juror is insufficient to establish a Batson violation.
The trial court's statement that one strike was insufficient, however, must be considered in light of the particular facts of this case. The record shows that the State and the defense used three strikes each to remove black veniremembers and that six blacks were left on the jury. In view of those facts, we conclude, as did the Court of Criminal Appeals, 627 So.2d 1027, that the trial court's finding of no purposeful discrimination by the State is due to be affirmed.
In Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991), this Court took the "opportunity to underscore the rule and policies that we announced in [Ex parte Jackson, 516 So.2d 768 (Ala.1986),] and Ex parte Branch, 526 So.2d 609 (Ala.1987)." Also, in Bird, we discussed the strengths and weaknesses of a prima facie case when significant numbers of blacks serve on the trial jury. We stated:
"This catalog of factors is illustrative only and not exhaustive. Harrell v. State, 555 So.2d 263, 268 (Ala.1989). For example, the State's failure to articulate a legitimate reason for one or more strikes may constitute one of the `facts and ... other relevant circumstances [that will] raise an inference' of discrimination. State v. Antwine, 743 S.W.2d 51, 64 (Mo.1987)
"It follows, therefore, that the strength of the defendant's prima facie case depends, in large part, on the number of these factors present. Although a prima facie case is always rebuttable, the existence of a number of suspicious factors requires a more cogent explanation in rebuttal. Consequently, the burden of production, which shifts to the State once a prima facie case has been presented, increases in proportion to the strength of the defendant's prima facie case. In other words, a `weak prima facie case may be rebutted more readily than a strong one.' Gable v. State, 257 Ga. 325, 357 S.E.2d 792, 795 (1987) (emphasis added).
"In this case, the venire consisted of 52 prospective jurors. The 19 black veniremembers comprised 36% of the venire. However, the fact that only one black juror was ultimately seated on the jury meant that blacks comprised only 8% of the trial jury. This fact alone reveals a disparate impact and immediately arouses suspicion of the existence of discriminatory intent. See Branch, 526 So.2d at 623; see also Batson [v. Kentucky], 476 U.S. [79] at 93, 106 S.Ct. [1712] at 1721 [90 L.Ed.2d 69 (1986)]. To be sure, the fact that a larger percentage of black veniremembers eventually is seated on a jury raises less suspicion than if a smaller representation is seated and affords less support for a prima facie case of discrimination. See Batson, 476 U.S. at 101, 106 S.Ct. at 1726 (White, J., concurring) ...; Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 821-22 (1988). In fact, a large representation might afford the defendant no support at all and could even weaken his prima facie case should he be able to establish one on other grounds. See Harrell v. State, 571 So.2d 1270 (Ala.1990) (on return to remand)."
594 So.2d 676, 680-81. (Emphasis supplied.)
Here, the fact that 50% of the trial jury was black sustains the trial court's determination that the petitioner failed to make a prima facie showing of purposeful discrimination in the prosecutor's use of peremptory strikes. Although we conclude that the trial judge incorrectly stated the law relating to the use of one peremptory strike to remove a prospective juror solely because of race, we nevertheless affirm the judgment of the Court of Criminal Appeals. Given the facts *1034 and circumstances of this case, we cannot say that the trial judge's determination that there was no purposeful discrimination was "clearly erroneous." Ex parte Branch, 526 So.2d at 625 (wherein this Court said that "`[w]e may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous.'") Consequently, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
STEAGALL, J., concurs in the result.
HOUSTON, Justice (concurring specially).
It is not necessarily a Batson violation for a party not to be able to give race-neutral reasons for every peremptory strike made by that party. See Bui v. State, 627 So.2d 855 (Ala.1992); In re DeMunn, 627 So.2d 1010 (Ala.1992). The trial court's inquiry and the reviewing court's inquiry should "focus solely upon the `propriety of the ultimate finding of discrimination vel non.'" Huntley v. State, 627 So.2d 1013, 1016 (Ala.1992), quoting United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir.1987). However, a party's being unable to give race-neutral reasons for a particular strike is different from an established single instance of purposeful racial discrimination in the use of peremptory strikes.
NOTES
[1] The petitioner presented another issue in his petition for writ of certiorari: whether age alone is a sufficiently race-neutral reason for exercising a peremptory strike. Although we did not grant certiorari review to address this issue, we note our discussion of age as a race-neutral reason in Ex parte Bird, 594 So.2d 676, 683 (Ala.1991):

"[W]e realize that in certain cases age may serve as a legitimate racially neutral reason for a peremptory strike. However, the age rationale is highly suspect because of its inherent susceptibility to abuse.... A mere summary declaration that age was a factor in the decision to strike is, therefore, constitutionally deficient and warrants reversal."
(Citations omitted; emphasis supplied.)