[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1276 
On the afternoon of November 30, 1991, Precillius Holt was shot to death and Sean Bogan[1] was shot and injured in an alley near 14th Street and 17th Place Southwest in Birmingham, Alabama. Two brothers, 20-year-old Horace Wright and 17-year-old Benjamin Wright, were separately indicted for murder and attempted murder. The defendants and the charges were consolidated for trial and both brothers were convicted as charged. Each brother was sentenced to life imprisonment for murder and to 20 years' imprisonment for attempted murder. This is a direct appeal from the convictions of both brothers.
 I
The appellants assert that the prosecutor used one peremptory strike in a racially discriminatory manner in violation ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), and Ex parte Branch, 526 So.2d 609 (Ala. 1987).
Eight members of the jury venire were black. The prosecutor used three of her 12 peremptory strikes to remove blacks. Defense counsel struck one black. From that we assume that four blacks served on the jury that tried the appellants. The transcript of the voir dire is not contained in the record on appeal.
After the jury had been selected, defense counsel objected only to the strike of juror no. 189. Defense counsel stated that the questions on voir dire to which this venire member responded established only that she was "a black female, older and married and unemployed." R. 19.
The trial judge denied the appellants' objection and ruled that defense counsel had failed to establish a prima facie case of purposeful discrimination. In doing so, he noted that both "victims in this case are black, so there's no motive for the State to strike blacks." R. 20. The trial judge also stated that the prosecutor "has tried probably 50 cases before me and I have never seen any indication that any of her strikes were motivated by race in exercising any peremptory challenges."[2] R. 20. The prosecutor never stated any reason for striking juror no. 189.
We fully recognize that "[t]he removal of even one juror for a racially discriminatory reason is a violation of the equal protection rights of both the excluded juror and the minority defendant." Ex parte Jackson, 640 So.2d 1050 (Ala. 1993). See also Ex parte Carter, 627 So.2d 1030 (Ala. 1993) ("[w]e hold that a single instance of purposeful racial discrimination in the use of peremptory strikes does violate Batson"); Ex parteBankhead, 625 So.2d 1146 (Ala. 1993) ("the failure to articulate a sufficient race-neutral reason for excluding even a single black veniremember may entitle the defendant to a new trial"). *Page 1277 
However, we find that the trial judge properly ruled that the appellants failed to establish a prima facie case of intentional racial discrimination by the prosecutor in the exercise of the challenged peremptory strike.
 "[A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing discriminatory impact then it should also be available to show the absence of a discriminatory purpose."
Harrell v. State, 571 So.2d 1270, 1271-72 (Ala. 1990) (emphasis in original) (citation omitted). See also Cox v. State,629 So.2d 670 (Ala. 1993). "The trial judge's determination in each case that peremptory challenges were not racially motivated is, ordinarily, entitled to considerable deference." Bui v. State,627 So.2d 855 (Ala. 1992), cert. denied, ___ U.S. ___,113 S.Ct. 2970, 125 L.Ed.2d 669 (1993). "It is well settled that the ruling of the trial court on a Batson hearing is entitled to substantial deference and will not be disturbed on review unless it is 'clearly erroneous.' Scales v. State,539 So.2d 1074 (Ala. 1988)." Ex parte Bankhead, 625 So.2d 1146 (Ala. 1993). Accord Ex parte Branch, 526 So.2d at 625-26.
After the State had presented its case-in-chief and had rested, and after defense counsel had requested a judgment of acquittal, defense counsel attempted to establish a prima facie case of racial discrimination in the striking of juror 189. At that time defense counsel stated that he would like to "further set out the fact" that
 "there were other people who responded to other questions which were indicative of being more prejudicial or pro defense than [juror no. 189]. And we'd also make that a ground.
 "And I'll specifically say that there was a white male, older fellow by the name of S.S.K., who is retired. Both he and his wife are retired and he had only sat on a civil case one time, and there was a settlement involved. And that was No. 175.
 "[Juror no. 189], she was in the same context as Mr. K. And that there's no other reason for striking her other than racial background, racial motivation.
 "We would again move for a mistrial based on that." R. 395-96.
In consideration of the facts that, in order to be timely, aBatson objection must be made prior to the jury's being sworn,Ross v. State, 581 So.2d 495, 496 (Ala. 1991), and that the defendant initially has the burden of establishing a prima facie case, we consider the appellants' belated attempt to add grounds to the Batson objection untimely. These grounds were available to defense counsel when the Batson objection was first made and there has been no justification offered for the delay in their presentation.
 II
The appellants argue that the trial court erred in refusing to allow defense counsel to cross-examine State's witness Jetson Rembert, Jr., as to whether he and his daughter were intoxicated when they witnessed the shootings.
Our review of the record shows that defense counsel was permitted to question Mr. Rembert about whether he and his daughter had been drinking. Mr. Rembert testified that he did not know whether he or his daughter had been drinking that day. R. 110-12. The trial court did sustain the prosecutor's objections to defense counsel's improper questions: 1) "How much had you had to drink at that point in time?" The objection was sustained because the question assumed that Mr. Rembert had been drinking. R. 110. 2) "Mr. Rembert, . . . you're asking the jury to go with what you saw. I want to know if you know if you'd been drinking anything?" The objection was sustained because "He's not asking the jury to do anything. It's an improper question." R. 111-12. 3) "Do you know for sure whether or not you were drinking?" The objection *Page 1278 
was sustained because the question had previously been asked and answered. R. 112. 4) "Well, you've seen her [Mr. Rembert's daughter] before when she's in an intoxicated state, haven't you?" The objection was sustained because "that doesn't have anything to do with this incident." R. 113.
We find that the trial judge did not abuse his discretion in this regard.
 " '[A] criminal defendant has the right to a thorough and sifting cross-examination, but that right is not absolute. The latitude and extent of cross-examination are matters within the sound discretion of the trial court, and in the absence of abuse, that discretion is not reversible on appeal.'
 "Ex parte Pope, 562 So.2d 131, 134 (Ala. 1989), cert. denied, 498 U.S. 841, 111 S.Ct. 118, 112 L.Ed.2d 87 (1990). 'The trial court has the discretion reasonably to limit the range of cross-examination in respect to collateral and irrelevant matters or with respect to matters that unnecessarily consume time in the trial of the case.' C. Gamble, McElroy's Alabama Evidence § 136.01 (4th ed. 1991). Furthermore, 'on appeal, the party claiming that a trial judge has abused his discretion in such aspect bears the burden of persuasion.' Connell v. State, 294 Ala. 477, 481, 318 So.2d 710, 714 (1974)."
Smiley v. State, [Ms. CR 92-722, August 13, 1993] 1993 WL 304616, *20 (Ala.Cr.App. 1993).
 III
Sean Bogan was shot in the neck and was the victim of the attempted murder with which each appellant was charged. Shortly after the shooting, while Bogan was in the hospital and unable to speak, he responded to police questioning by writing two notes. Over the appellants' objection, the State was permitted to introduce these handwritten notes into evidence at trial. The appellants claim that this constitutes reversible error in that the admission of the notes improperly enhanced the credibility of the witness.
Although we recognize that there is no rule of law "that is so all-encompassing" as to require a party to "produce the best evidence which the nature of the question admits," C. Gamble,McElroy's Alabama Evidence, § 212.01 at 582-83 (4th ed. 1991), in this case, the notes written by the speechless Bogan to the investigating officer were the "best evidence" of what he "told" the officer. We find no error in their admission.
 IV
We reject the appellants' assertions that the trial court repeatedly refused to allow defense counsel to elicit testimony that would support the defense of self-defense.
 A.
The appellants contend that the trial court refused to allow the defense to show that Bogan's prior testimony about the position of Holt's (the deceased) hands was inconsistent with his trial testimony. We reject this argument. Although the prosecutor's objections to two questions asked by defense counsel were sustained, defense counsel was not prevented from cross-examining the witness about the substance of his prior testimony.
Our review of the record shows that the trial judge sustained the prosecutor's objection to one question on the ground that there was no predicate as to the particular time involved. R. 314. The second objection was sustained because the question was repetitious. R. 315. We find no abuse of discretion. The record supports those rulings of the trial judge.
 B.
The appellants complain because the State "lost" the jacket bearing the Los Angeles Raider's insignia worn by the deceased at the time of his death. The loss of the jacket was raised only after the State had rested its case-in-chief. At that time, defense counsel stated:
 "[MR. BLALOCK:] Now, I wasn't going to try to get it admitted into evidence because the chain would have made it — I'm not interested in having it admitted and carried back there. But I am interested in having it shown to my clients and to Mrs. Wright, and see if they've ever seen this jacket, and if this is in fact the jacket that Precillius Holt had on that particular day. *Page 1279 
 "And now the State indicates to me they don't know where this black jacket is. They haven't got a clue. . . .
 "And, Judge, the whole time I'm thinking it's in this bag with all the tennis shoes, the pager, the baseball cap, everything else that they've described here. And the only thing that's not there is the black jacket.
 "THE COURT: Well, that stuff has been here since we started the trial.
"MR. BLALOCK: Yes, sir.
 "THE COURT: You've had ample opportunity to examine it to see what's in there.
". . . .
 "Well, I think you had ample opportunity to see it before trial. . . .
". . . .
 "Well, there are photographs of this item. And according to what you've told me, you merely want to have the defendant's family or somebody identify this jacket as belonging to or not belonging to the alleged victim in this case. And it seems to me that they could do that from a photograph as well as looking as the item itself." R. 388-93.
The prosecutor represented to the trial judge that she had checked with the evidence technician and the coroner and that she did not have "any idea" where the jacket was. R. 392. Although the trial judge had granted the appellants' motion for discovery, the production of any tangible evidence was predicated upon the appellants' additional written request. C.R. 51. The trial court's "order for discovery and production discovery by the defendant" stated:
 "C) Documents and Tangible Objects: Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), . . . permit the defendant to analyze [and] inspect . . . tangible objects . . . which are within the possession, custody, or control of the state/municipality. . . ." C.R. 51.
Rule 16.4(c), A.R.Crim.P., provides: "Whenever a written request for discovery is required by this rule, a copy of the request shall be filed with the court." The record contains no such request.
"A defendant's objection to evidence on the ground that it was not disclosed under Rule 16.1 must, like every other objection to evidence, be interposed in a timely and specific manner. Pettway v. State, 607 So.2d 325 (Ala.Cr.App. 1992). See also Molina v. State, 533 So.2d 701, 713 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851
(1989)." Henry v. State, 607 So.2d 1298, 1300 (Ala.Cr.App. 1992). Here, there was no violation of Rule 16.1(c) because the appellants never presented any written request for an opportunity to inspect the jacket. See Clemons v. State,491 So.2d 1060, 1061 (Ala.Cr.App. 1986).
 C.
The appellants assert that the trial judge improperly prevented defense counsel from eliciting testimony that would substantiate their claim of self-defense.
C-1. The trial judge properly sustained the State's objection to defense counsel's question and the answer of defense witness Holbert Wright, the father of the appellants, that "in [his] mind" the deceased was armed with a "gun." R. 455. Under certain conditions, a defendant claiming self-defense may testify that he "thought" that the deceased was armed with a deadly weapon, see generally McElroy's at § 63.01; however, we have been cited to no rule of evidence that authorizes a witness other than the defendant to testify to the witness'sbelief that the deceased was armed. The prosecutor's objections "to what was in his mind. He can describe what he saw," and "this is talking about his mind, not the mind of the defendants," were properly sustained. R. 455, 456.
C-2. The appellants complain that Holbert Wright was not allowed to testify that on the Thursday and Friday before the shooting on Saturday, Bogan threaten to "shoot up" his house. Wright testified that on Thursday Bogan "got boys what he go around with" and stood near his house. R. 415-16. Although Wright stated that he never heard Bogan say anything on that occasion, R. 419, he was allowed to testify that he heard "them" saying that "[t]hey were going, *Page 1280 
you know, shoot up the house, you know," R. 420. At the time these questions were asked, there had been no showing that either appellant was present at this time or had any knowledge of this threat.[3] R. 420. Wright did not hear Bogan make any threat on that Friday. R. 423. Although Wright testified that he told his son Horace that Bogan was "still threatening me," R. 442, Mr. Wright did not testify that he communicated Bogan's alleged particular threat to "shoot up" the house to either appellant.
 "In some cases where the accused is relying on self-defense, he will want to show that the victim had previously committed specific acts of violence towards other persons and that the accused knew of such acts. The purpose of such evidence will be to show the accused's reasonable apprehension of peril. The general rule is that such evidence is admissible if the person toward whom the violence was directed had a very close connection with the accused such that there would be a reasonable apprehension of peril on the part of the accused. It is quite clear that such violence towards other persons is not admissible if it is remote in time or lacks any connection in circumstance with the accused. It would appear, though not ever expressly stated in the cases, that the following are the factors which will be considered by the trial court in exercising its discretion over whether to admit such acts of violence:
 "(a) The distance, small or great, between the time and place of the reported former act of violence and the presently charged homicide or assault.
 "(b) The presence or absence of a tie of kinship or friendship between the reported victim of deceased's former act of violence and the accused. Such factor logically indicating whether the accused could reasonably feel that the deceased's reported hostility would exist against him also.
 "(c) The relationship between the accused and the deceased after accused was informed of the former act of violence. If the accused continues to live with or associate with the deceased, then such is a factor against admitting the evidence of violence towards other persons.
 "(d) The similarity or dissimilarity of the immediate facts of the presently charged homicide to the facts of the reported former act of violence. The more similar they are the more likely the court is to admit the former act of violence."
C. Gamble, McElroy's Alabama Evidence § 63.01(3) (4th ed. 1991) (footnotes omitted).
In other portions of the record, the defense was allowed to establish that the victims, or alleged members of a gang with whom they were associated, threatened to "shoot up" the appellant's house. The basis for the particular objection now presented is found in the action of the trial judge in sustaining two objections by the prosecutor.
 "Q. [Defense counsel:] And he threatened you when he was out there with these other fellows out in the alley on either Thursday or Friday — threatened to shoot up your house, you knew that?
"A. I heard it.
 "MS. McCLENDON [prosecutor]: I'm going to object to that, Your Honor. There's been nothing that ties down to any threat that this man heard from some boy outside his house or across the alley."
"THE COURT: I sustain."
". . . .
 "Q. This man had threatened your home; is that correct?
"A. Own Home.
 "MS. McCLENDON: Objection, Your Honor, to defense counsel testifying for him.
 "THE COURT: Sustained. Quit leading, Mr. Blalock." R. 490-91.
That Bogan was with a group of "boys" who had threatened to "shoot up" Mr. Wright's house was established by the evidence. There was no testimony that Mr. Wright heard Bogan himself make this threat. It is within the discretion of the trial *Page 1281 
judge whether to allow leading questions. Ala. Code 1975, §12-21-138. We find that the trial judge properly sustained the State's objections.
C-3. The appellants claim that the appellant Benjamin Wright was not allowed to testify that the six people across the street from his house on Thursday and Friday were members of a youth gang. We find no error in this regard, considering the particular question to which the objection was sustained.
 "Q. Did you recognize them as being part of the youth gang or youth group?
"A. Yes.
 "MS. McCLENDON: Your Honor, I'm going to ask that he — I object to this question as to what they are, and ask if he recognizes who they were. I mean I object to them being members of some mysterious gang that we don't know about.
"THE COURT: Well, sustained." R. 509.
Defense counsel then elicited the appellant Benjamin's testimony that he recognized Bogan, Holt, and two other named individuals; that both Bogan and Holt and the others "all of them" were members of the "CRIPS youth gang." R. 510, 511. We find no error in this matter.
C-4. The appellants assert reversible error in the following:
 "Q. [defense counsel] . . . Do you know whether or not Pre had a gun on him?
 "A. [Appellant Benjamin Wright] In my mind, you know, I assumed he did.
 "MS. McLENDON: I'm going to object to in his mind unless it's something that he can tangibly say that —
 "THE COURT: Sustained. Just answer the question, please, sir.
"MS. McLENDON: — would lead him to believe.
 "Q. All right. You had known him to carry a gun, though, right?
"A. Yes, sir." R. 526.
Later, the appellant Benjamin testified without objection: "I thought they was going to shoot me, so I shot first." R. 532. He also testified that he stated having "bad feelings" toward Holt when, that same afternoon as the shooting, Holt said "he was gonna shoot our house up." R. 550. We find no abuse of the trial court's discretion in this regard. Furthermore, any error in the action of the trial judge was harmless. See Rule 45, A.R.App.P. A reading of appellant Benjamin's testimony makes it clear that he was testifying that he "thought" the victim was armed with a pistol when he fired his weapon.
C-5. The appellants assert that appellant Horace Wright was not permitted to testify that he shot Bogan and Holt in self-defense. The particular basis for this claim of error appears in the record as follows:
 "Q. Did you shoot Pre and Sean in self-defense or shoot at them?
"A. Yes.
 "Ms. McCLENDON: I'm going to object to that. That's the province of the jury, Your Honor.
"THE COURT: Sustained." R. 613-14.
Almost immediately after this, appellant Horace Wright testified: "I fired after I saw him step back and reach like he was reaching for a gun." R. 614.
While a witness "cannot give his opinion when such constitutes a legal conclusion or the application of a legal definition," C. Gamble, McElroy's Alabama Evidence § 128.07 (4th ed. 1991), "a witness now may testify on direct examination to his intention, motive or other physically unexpressed mental state, provided that the testimony is material to the issues in the case," McElroy's at § 102.07(3). However, any error with regard to the above matter was harmless. A consideration of appellant Horace Wright's testimony leaves no doubt that his testimony was that he acted in self-defense.
 V
The appellants claim error occurred when the trial judge overruled defense counsel's objection to the prosecutor's comment in closing argument that the appellants live in a "local crack house." R. 628. We find that the prosecutors comment is supported by ample evidence.
There was testimony that the mother of the appellants, Florene Wright, "was selling *Page 1282 
drugs for Sean Bogan," that she owed him $30 for three $10 bags of cocaine, and that she was "selling dope out of her house." R. 203. "She was just selling, making her a little profit, getting her some money." R. 204. See also R. 226. Bogan testified that he gave Mrs. Wright drugs to sell because "[m]ostly everybody in their house was on drugs, so that's where everybody used to go and get them." R. 262.
The prosecutor's comment was a reasonable inference from the evidence. "The test of a legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument to the jury." Ward v. State,440 So.2d 1227, 1230 (Ala.Cr.App. 1983). "Counsel for both the State and [the] defendant are allowed wide latitude in drawing reasonable inferences from the evidence in their closing arguments. A prosecutor as well as defense counsel has a right to present [her] impression from the evidence, if reasonable, and may argue every legitimate inference." Manigan v. State,402 So.2d 1063, 1072 (Ala.Cr.App.) (citations omitted), cert. denied,402 So.2d 1072 (Ala. 1981). "A prosecutor may express her opinion concerning reasonable inferences, deductions, and conclusions to be drawn from the facts in evidence, as long as she does not express an opinion as to the defendant's guilt. Sams v. State,506 So.2d 1027, 1029 (Ala.Cr.App. 1986)." Cross v. State,536 So.2d 155, 160 (Ala.Cr.App. 1988).
 VI
The trial judge instructed the jury on the principles of law involved in this case on the afternoon of one day. On the morning of the next day, the jury requested to be recharged on the principles of murder, manslaughter, and complicity. R. 668. Although given the opportunity, the jury did not request that any other instruction be repeated. At that point, defense counsel requested the trial judge to recharge the jury on the principles of self-defense. It appears that defense counsel also objected to the trial judge's failure to recharge the jury on reasonable doubt and the presumption of innocence. R. 682-83.
"A trial judge is not required to repeat any other part of his oral charge when answering a specific inquiry from the jury." Thomas v. State, 455 So.2d 278, 281 (Ala.Cr.App. 1984). "When a jury requests additional instructions the recommended practice is for the trial court to remain within the area of the specific request in making his response." Davis v. State,440 So.2d 1191, 1195 (Ala.Cr.App. 1983), cert. denied,465 U.S. 1083, 104 S.Ct. 1452, 79 L.Ed.2d 770 (1984).
The appellants received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
PATTERSON, McMILLAN and MONTIEL, JJ., concur.
TAYLOR, J., concurs specially with opinion.
[1] Although this victim's name is spelled "Boglin" throughout the transcript, it is spelled "Bogan" in the indictments.
[2] Defense counsel reminded the trial court of Huntley v.State, 627 So.2d 1011 (Ala.Cr.App. 1991), affirmed, 627 So.2d 1013
(Ala. 1992), which involved the same trial judge and the same prosecutor. In Huntley, the trial judge also expressly determined that the defendant had failed to present a prima facie case of discrimination. However, the prosecutor stated her reasons for striking blacks and this Court found that the State had "failed to carry its `burden of articulating . . . clear, specific and legitimate reason[s] for the challenges[s] which relate[d] to theparticular case to be tried, and which [were] nondiscriminatory.'"Huntley v. State, 627 So.2d at 1012 (emphasis in original) (quoting Ex parte Branch, 526 So.2d at 623).
[3] Appellant Benjamin Wright later testified without objection that he heard Bogan "holler" that "if we didn't pay him, he was gonna shoot the house up." R. 512. Even later, he testified that "Pre was still over there talking and saying he was gonna regular shoot the house up." R. 522.