[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 829 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 830 
 ON REHEARING EX MERO MOTU
This court's opinion dated January 19, 1996, is hereby withdrawn and the following opinion is substituted therefor. The appellant, Larry Donald George, was convicted of two counts of murder made capital because two people were killed as the result of one course of conduct, see § 13A-5-40(a)(10), Code of Alabama 1975, and because the murders occurred during the course of a burglary, see § 13A-5-40(a)(4), Code of Alabama 1975. The appellant was also convicted of attempted murder, see § 13A-4-2 and § 13A-6-2, Code of Alabama 1975. The jury, by a vote of 10 to 2, recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution. The appellant was also sentenced to life imprisonment on the attempted murder conviction. *Page 831 
The state's evidence tended to show that on the evening of February 12, 1988, the appellant shot his wife Geraldine George. The injuries she sustained as a result of the shooting rendered her a paraplegic. He also shot and killed Janice Morris and her boyfriend, Ralph Swain. Dr. Joseph Embry, a medical examiner for the State of Alabama, testified that Morris died as a result of a gunshot wound to the right side of her chest. Swain died as a result of a gunshot wound to the left side of his head. The lower half of the appellant's wife's body was paralyzed as a result of the damage caused by a bullet that entered her arm and passed through the mid-portion of her body.
Geraldine George testified that on the evening of February 12, 1988, she finished her shift at the Wal-Mart discount department store and went to her apartment complex. George had left her two children with her neighbor, Janice Morris, so she went to Morris's apartment to pick up her children. As she was leaving the apartment she saw the appellant talking to her son. The appellant approached her and pulled a pistol from his jacket pocket. She ran into Morris's apartment, yelling for Morris to telephone the police. She heard gunshots, turned, and saw the appellant pointing a gun at her before he fired. Janice Morris was shot while she was at the telephone, and Ralph Swain was shot as he ran up the stairs to the second floor.
Andrew Watkins was visiting a friend at the apartment complex on the night of the shootings. He testified that he heard gunshots and that he watched the appellant leave an apartment and drive away in his automobile. Watkins followed the appellant's automobile and wrote down his license tag number. He then went to police Captain Willard Hurst's house, where he reported the incident. The appellant was apprehended in Delaware six years after the murders as a result of an episode of the television show America's Most Wanted on which the case was featured.
The appellant raises many issues on appeal. Many of the issues were not brought to the trial court's attention. However, because this case involves the death penalty, this court is obliged under Rule 45A, Ala.R.App.P., to apply the plain error doctrine.
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Rule 45A, Ala.R.App.P.
 "The Alabama Supreme Court has adopted federal case law defining plain error, holding that ' "[p]lain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings,' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981))."
Haney v. State, 603 So.2d 368, 392 (Ala.Cr.App. 1991), aff'd,603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925,113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " United States v. Young,470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 14 (1985), quoting United States v. Frady, 456 U.S. 152, 163,102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). To find plain error, an appellate court must find that "the claimed error not only seriously affected 'substantial rights,' but that it had an unfair prejudicial impact on the jury's deliberations." Young,470 U.S. at 18 n. 14, 105 S.Ct. at 1047, n. 14,84 L.Ed.2d at 14.
 GUILT PHASE I
The appellant contends that the consolidation of the capital murder cases and the attempted murder case was inherently prejudicial and that therefore that consolidation violated his constitutional right to a fair trial. *Page 832 
Consolidation of similar offenses is specifically provided for in Rule 13.3(c), Ala.R.Crim.P. This rule states:
 "If offenses or defendants are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially were under a single indictment, information, or complaint. However, the court shall not order that the offenses or the defendants, as the case may be, be tried together without first providing the defendant or defendants and the prosecutor an opportunity to be heard."
This rule does not exclude the consolidation of a capital offense and another offense.
In Ex parte Hinton, 548 So.2d 562 (Ala.), cert. denied,493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989), the Alabama Supreme Court first addressed the issue of the consolidation of two capital cases against one defendant. The Court in Hinton
stated:
 "No capital cases have ever before been consolidated for trial in Alabama, and while Rule [13.3], A.R.Crim.P., provides for consolidation of similar offenses, Hinton argues that the consolidation of these two capital cases created such prejudice as to deny him a fair trial. Although different procedures apply in capital cases, we are not convinced that the defendant has shown prejudicial error sufficient to require reversal. Of course, if a defendant can demonstrate actual and compelling prejudice that outweighs the benefits of judicial economy resulting from joinder, the refusal to sever the cases constitutes reversible error. United States v. Payne, 750 F.2d 844, 859 (11th Cir. 1985)."
548 So.2d at 565 (emphasis in original).
Thus, the question is whether the appellant can demonstrate "actual and compelling" prejudice. None was shown here. The appellant was tried for two counts of capital murder and for one count of attempted murder. The charges arose from one course of conduct. There is no indication that the jury could not separate the evidence relating to each crime. The trial court did not err in consolidating the offenses for trial.
 II
The appellant next contends that the indictment that charged him with capital murder was multiplicitous and, that it, therefore, should have been dismissed. Specifically, the appellant contends that counts two and three of the indictment charged him with the same offense and thereby violated the constitutional prohibition against double jeopardy. No objection to the indictment was raised at trial. Thus, this issue must be reviewed under the plain error doctrine.
The appellant was indicted on three counts of capital murder. Count one charged the appellant with the capital offense of the murder of two or more persons during one course of conduct, see § 13A-5-40(a)(10). Counts two and three of the indictment charged the appellant with the capital offense of murder committed during a burglary, see § 13A-5-40(a)(4). Counts two and three differed in the language used to describe the crime of first degree burglary. Count two relied on the "armed with a deadly weapon" definition in § 13A-7-5(a)(1), while count three tracked the language of § 13A-7-5(a)(2), which requires physical injury to a person not a participant in the crime.
At the close of the evidence and before the case was submitted to the jury, the state moved to dismiss count two of the indictment and elected to proceed under counts one and three.
A single transaction may give rise to the charging of multiple counts in an indictment when the purpose of charging multiple counts is to vary the description of the same offense in order to meet "every probable contingency of evidence" and not to convict the accused on all alternative counts contained in the indictment. Floyd v. State, 486 So.2d 1309 (Ala.Cr.App. 1984), aff'd, 486 So.2d 1321 (Ala. 1986), cert. denied,479 U.S. 1101, 107 S.Ct. 1328, 94 L.Ed.2d 179 (1987). *Page 833 
The indictment did not violate principles of double jeopardy.
The Alabama Supreme Court recently in Ex parte McWilliams,640 So.2d 1015 (Ala. 1993), faced the question of whether McWilliams's constitutional protection against double jeopardy was violated when he was charged with and convicted of three counts of capital murder. The Court, in upholding the convictions, stated the following:
 "In the present case, it is clear that the jury knew that it was convicting McWilliams of murdering Patricia Reynolds only once. It is also clear that the jury knew that McWilliams's crime was made capital because his victim was murdered in the course of one robbery and one rape. We conclude, therefore, that the sentencing court has not prescribed a greater punishment than the legislature intended. Even if McWilliams's rights against double jeopardy had been violated by the two convictions or robbery-murder, the convictions for one count of robbery-murder and one count of rape-murder would remain; and either of these would be sufficient to support a death sentence."
640 So.2d at 1022. No error occurred here.
 III
The appellant further asserts that the trial court erred in refusing to grant his motion for a change of venue because of the pretrial publicity that he alleges the case received.
The record does not contain the evidence offered by the appellant in support of his motion for a change of venue. In fact, other than a few brief references, the record is devoid of evidence indicating that the appellant's motion was heard and ruled on.
The record does contain a court order dated September 26, 1994, which scheduled a hearing on the appellant's motion for a change of venue on October 6, 1994. During a motion hearing held two days later, on September 28, 1994, the parties agreed to hold a hearing on the venue motion during the week before the trial. The court stated that it would rule on the motion after voir dire examination of the jury. There is no further reference in the record to the appellant's motion. There was no ruling or argument on the motion during or after voir dire examination. No entry relating to the motion was made on the docket sheet. Moreover, in an order to supplement the record "it was agreed that there were no pretrial hearings, sidebar conferences and conferences in chambers that were not made part of the record."
 "[A] change of venue must be granted only when it can be shown that the pretrial publicity has so 'pervasively saturated' the community as to make the 'court proceedings nothing more than a "hollow formality" ' . . . or when actual prejudice can be demonstrated. The burden of showing this saturation of the community or actual prejudice lies with the appellant."
Oryang v. State, 642 So.2d 979, 983 (Ala.Cr.App. 1993). (Citations omitted.)
Assuming the appellant's motion was argued and ruled upon, there is no evidence in the record from which this court can determine whether the appellant met his burden in showing that the venire was prejudiced by pretrial publicity. No reversible error exists here.
 IV
The appellant also contends that the trial court erred by examining the jurors during voir dire in panels of 12 rather than conducting individually sequestered voir dire examination. The appellant asserts that individual examination was necessary to avoid contaminating the entire venire.
The appellant never requested sequestered individual voir dire. Thus, this contention must be evaluated under the plain error doctrine. Rule 45A, Ala.R.App.P.
The record indicates that the appellant was allowed to question privately any juror who expressed knowledge of the case. "Even in capital cases, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination." Hallford v. State,548 So.2d 526, 538 (Ala.Cr.App. 1988), aff'd, 548 So.2d 547
(Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354,107 L.Ed.2d 342 (1989). See also Taylor v. State, 666 So.2d 36 *Page 834 
(Ala.Cr.App. 1994), aff'd on remand, 666 So.2d 71 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995).
Moreover, in Haney, supra, a capital murder case, this court held that questioning a venire in panels met the requirements of due process and also provided reasonable assurance that any prejudice on the part of the jurors would be exposed. The trial court committed no error by not conducting individual voir dire.
 V
The appellant further contends that the trial court erred in denying his motion to strike for cause a juror who, he says, expressed a preconceived notion about the appellant's guilt.
During voir dire, the following occurred:
 "Mr. Giddens [appellant's counsel]: [Are] there any of you that — do you believe that he must be guilty, that he must have done something, otherwise he wouldn't have been indicted and charged and be in court today? Do any of you believe that? He must have done something or he wouldn't be here."
"(Juror D. raises his hand)
"Mr. Giddens: Mr. D.?"
 "Juror D.: He wouldn't be here if he hadn't done something.
 "Mr. Giddens: Mr. D., if you believe that he wouldn't be here if he hadn't done something, with that being the case and that being your belief, could you put that belief aside and render a verdict based strictly on the law and evidence?
 "Juror D.: What would come out of court. "Mr. Giddens: What would come out of court? You believe he must have done something or he wouldn't be here?
 "Juror D.: I wouldn't think so. I wouldn't think he would be here."
After the appellant questioned the jurors, the state attempted to clarify Juror D.'s response to the appellant's question.
 "Mr. Rumsey [prosecutor]: I have just one other follow-up question, Your Honor.
"The Court: Go ahead.
 "Mr. Rumsey: Particularly with regard to Mr. D. The burden is on the State of Alabama to prove that the defendant is guilty beyond a reasonable doubt and to a moral certainty. We accepted that burden when we came to court. Now regardless of any thoughts that you have that he must have done something or he wouldn't be here, could you put any thoughts like that aside and just render a fair and impartial verdict based strictly on what comes to you from the witness stand?
"Juror D: Yes, sir."
For a prospective juror to be stricken for cause based on this statutory ground, the juror must have "a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict." § 12-16-150(7). "[T]o disqualify a prospective juror, [the juror] must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused. Such opinion must be so fixed as that it would bias the verdict [the] juror would be required to render." Black v. State, 596 So.2d 40, 42
(Ala.Cr.App. 1991), quoting Siebert v. State, 562 So.2d 586
(Ala.Cr.App. 1989), aff'd, 562 So.2d 600 (Ala.), cert. denied,498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 408 (1990).
Furthermore, "even though a prospective juror admits to a potential bias, if further voir dire examination reveals that the juror in question can and will base his decision on the evidence alone, then a trial judge's refusal to grant a motion to strike for cause is not error." Perryman v. State,558 So.2d 972, 977 (Ala.Cr.App. 1989).
Here, even though Juror D. initially expressed an opinion concerning the appellant's guilt, he unequivocally stated that he could put his opinion aside and render a verdict based on the evidence presented during the trial. The record does not support a finding that Juror D.'s opinion was so "fixed" that it would bias his verdict. The trial court did not err in refusing to strike this prospective juror for cause.
 VI
The appellant also asserts that the trial court erred by not excusing for cause a juror *Page 835 
who admitted knowing the surviving victim. The appellant never made such a request to the trial court but contends on appeal that the juror should have been dismissed on the court's own motion.
During voir dire examination, the appellant's counsel read the names of potential witnesses and other individuals associated with the case. The veniremembers were asked to raise their hands if they knew any of the persons named. When the appellant's counsel read the name "Geraldine George," Juror G. raised her hand. After all the names were read, the appellant's counsel made the following statement:
 "I want to go back and ask the folks that answered that they knew of those people I just asked about this question. Does the fact that you know these people, could you put that out of your mind and just base your verdict on the law and evidence that comes to you from the witness stand? Is there anybody that couldn't do that?"
No one raised a hand. The appellant asked other questions and did not challenge Juror G. or any other jurors for cause.
In another capital case that involved a veniremember's acquaintance with the victim, Smith v. State, 581 So.2d 497,503 (Ala.Cr.App. 1990), rev'd on other grounds, 581 So.2d 531
(Ala. 1991), we addressed this same issue and stated:
 "The party seeking to challenge a juror for cause must show that the questioned juror is due to be struck under § 12-16-150, Code of Alabama 1975, or on common law grounds. . . . [Where the appellant failed to challenge the juror for cause] the appellant must show that the trial court's failure to remove sua sponte the two prospective jurors was 'plain error.'
 "We find no error, since both jurors stated that their limited knowledge about the case and the limited acquaintance with the victim's family members would not affect their verdict. 'It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961)."
581 So.2d at 503-04.
Here, Juror G. unequivocally indicated that her acquaintance with the victim would not affect her verdict. The court did not err by failing to conduct further examination or to excuse, sua sponte, this prospective juror.
 VII
The appellant additionally contends that the court erred in finding that he had not established a prima facie case of racial discrimination under Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court held that black prospective jurors could not be struck from a black defendant's jury based solely on their race. The United States Supreme Court extended its decision in Batson to white defendants in Powers v. Ohio,499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); to civil cases in Edmonson v. Leesville Concrete Co., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); and to defense counsel in criminal cases in Georgia v. McCollum 505 U.S. 42,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). The Alabama Supreme Court has held that Batson applies to the striking of white prospective jurors. White Consolidated Industries, Inc. v. American LibertyInsurance Co., 617 So.2d 657 (Ala. 1993). In 1994, the United States Supreme Court extended Batson to apply to gender-based strikes in J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419,128 L.Ed.2d 89 (1994).
In this case the state had 14 peremptory strikes. It used 5 strikes to remove black veniremembers. Seven black venire-members remained on the jury, eight if a black alternate is counted.
 "The trial court's finding that a defendant did not present a prima facie case of discrimination under Batson is reviewed under a 'clearly erroneous' standard. Wilson v. State, 690 So.2d 449
(Ala.Cr.App. 1995). 'In determining whether there is a prima facie case, the court is to consider "all relevant circumstances" which could *Page 836 
lead to an inference of discrimination.' Ex parte Branch, 526 So.2d 609, 622 (Ala. 1987). In Branch, the Alabama Supreme Court set forth a nonexhaustive list of nine types of evidence that could be used to raise this inference.
 " '1. Evidence that the "jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole." [People v.] Wheeler, 22 Cal. 3d [258,] at 280, 583 P.2d [748,] at 764, 148 Cal.Rptr. [890,] at 905 [(1978)]. For instance "it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions," Wheeler, 22 Cal. 3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 " '2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
 " '3. The past conduct of the offending attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)].
 " '4. The type and manner of the offending attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 " '5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355
(Fla.Dist.Ct.App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656
(1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 (1978).
 " '6. Disparate treatment of members of the jury venire with the same characteristics; or who answer a question in the same of similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 504 [503] So.2d at 352 and 355.
 " '7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 " '8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229,] at 242[, 96 S.Ct. 2040, [at 2048-49,] 48 L.Ed.2d 597
(1976)].
 " '9. The offending party used peremptory challenges to dismiss all or most black jurors, but did not use all of his peremptory challenges. See Slappy, 503 So.2d at 354, Turner, supra.'
 "Branch, 526 So.2d at 622-23. The fact that the prosecution engaged in a pattern of strikes against black jurors in but one factor the court may consider.
". . . .
 "When considered alone, evidence of the prosecution's use of a large number of its peremptory strikes to exclude black jurors would allow, but would not compel, a finding of prima facial discrimination. Ex parte Thomas, [659] So.2d [3] (Ala. 1994), (defendant may establish a prima facie case solely on prosecution's use of its strikes against black veniremembers). Other types of relevant evidence specified in Branch may be examined to determine whether the inference of discrimination has been raised. Even if the prosecution uses all of its peremptory strikes to exclude black jurors, a trial court is not required to rule that a prima facie case of discrimination *Page 837 
has been made if other relevant evidence sheds light upon the issue."
Mines v. State, 671 So.2d 121, 122-23 (Ala.Cr.App. 1995) (emphasis in original).
The party alleging a Batson violation has the burden of establishing a prima facie case of discrimination. The appellant did not meet that burden. The only evidence presented that a Batson violation occurred was that the state used 5 of its 14 strikes to remove blacks. The trial court's ruling that no prima facie case had been established was not clearly erroneous.
The appellant further contends, for the first time on appeal, that the prosecution's use of its peremptory challenges violated J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127,114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), by making gender-based strikes to remove black males from the venire.
Initially, we note that this contention is raised for the first time on appeal. Thus, we must apply the plain error doctrine. Rule 45A, Ala.R.App.P.
 "Before the plain error analysis can come into play in a Batson issue, the record must supply an inference that the prosecution engaged in purposeful discrimination. Ex parte Watkins, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)."
Pace v. State, 714 So.2d 316, 318 (Ala.Cr.App. 1995).
The record does not supply an inference of gender discrimination. The state struck four of the six black men who were on the venire. However, as the state argues in its brief, the state used its third, sixth, seventh, eighth and ninth strikes to remove women. Furthermore, the voir dire examination in this case was extensive. The voir dire examination was conducted in panels of 12 and each panel was questioned extensively. Looking at the factors in Branch, and outlined above in Mines, we cannot say that the record raises an inference of gender discrimination.
 VIII
The appellant contends that the trial court erred when it received into evidence certain items seized as a result of the appellant's arrest without first requiring the state to prove the legality of the appellant's arrest. The appellant did not challenge the validity of his arrest at trial. Thus, we must evaluate this contention under the plain error doctrine. Rule 45A, Ala.R.App.P.; Haney, supra.
Both the indictment and the arrest warrant are contained in the record. " 'On the question of probable cause, it is well established that the indictment itself, together with proof that the defendant is the one named in it, is prima facie evidence of probable cause.' " Roynica v. State, 54 Ala. App. 436,441, 309 So.2d 475, 478-79 (1974), cert. denied, 293 Ala. 772, 309 So.2d 485 (Ala.), cert. denied, 423 U.S. 858,96 S.Ct. 111, 46 L.Ed.2d 85 (1975), quoting United States v. Mayer,22 F.2d 827 (D.C. 1927). There is no evidence in the record to support a finding that the appellant's arrest was in any way unlawful. The trial court did not err.
 IX
The appellant contends that the eyewitness testimony of Andrew Watkins was tainted and unreliable. Again, there was no objection to Watkins's identification evidence at trial; thus, we must review this contention under the plain error doctrine. Rule 45A, Ala.R.App.P.
Watkins testified that he saw the appellant leaving the scene after he had heard gunshots. The appellant asserts that Watkins's identification was unreliable because, he argues, Watkins's observations were made in the dark and from a distance of approximately 150 feet. Also, the appellant contends that the testimony was tainted because Watkins had since seen the appellant on police bulletins and on an episode of the television series America's Most Wanted.
The authority that the appellant cites in his brief to this court involves situations where impermissibly suggestive pretrial identification procedures were used. There was no evidence that the pretrial identification *Page 838 
procedures here were impermissibly suggestive. The contentions raised by the appellant concerning Watkins's identification went to the credibility of Watkins's testimony and presented an issue for the jury to resolve. Hull v. State, 581 So.2d 1202
(Ala.Cr.App. 1990).
 X
The appellant also contends that the trial court erred in allowing into evidence four autopsy photographs of one of the slain victims. The appellant asserts that the photographs served no purpose other than to prejudice the jury against him.
 "Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. . . . Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters. E.g., Burton v. State, 521 So.2d 91 (Ala.Cr.App. 1987). Finally, photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors. Hutto v. State, 465 So.2d 1211, 1212
(Ala.Cr.App. 1984)."
Ex parte Siebert, 555 So.2d 780, 783-784 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). The photographs depicted the gunshot wounds and were used to corroborate the testimony of the state's medical examiner. The trial court did not err in receiving the photographs into evidence.
 XI
The appellant next contends that the district attorney engaged in numerous acts of prosecutorial misconduct that, he says, denied him a fair trial. Improper comments by the district attorney will result in reversal only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright,477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144, 157
(1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637,94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).
The appellant first argues that the district attorney constantly asked leading questions on direct examination to such an extent that he acted as a witness for the state. The appellant directs our attention to seven such questions in the record. However, the appellant objected to only one of those questions and in response to that objection the trial court asked the district attorney to rephrase the question. Therefore, we must review the other questions under the plain error standard of Rule 45A, Ala.R.App.P.
None of the questions led to the admission of illegal evidence and none prejudiced the appellant. The questions were merely attempts to speed up the direct examination. The trial court is vested with wide discretion in this area "because it has been said that there is no form of question which may not be leading and that the trial court should look beyond the form to the substance and effect of the inquiry in the particular circumstances of the case." C. Gamble, McElroy's AlabamaEvidence, § 121.05(3) (4th ed. 1991). We find no abuse of the trial court's discretion.
The appellant next argues that the district attorney repeatedly misstated the law as to reasonable doubt during opening statement and closing argument. He contends that the district attorney violated the holding of the United States Supreme Court in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328,112 L.Ed.2d 339 (1990), because, he says, the district attorney equated reasonable doubt with "substantial" doubt and "moral certainty." In Cage, the United States Supreme Court held that jury instructions that equated reasonable doubt with "grave uncertainty," "actual substantial doubt," and "moral certainty" violated the Due Process Clause of the Fourteenth Amendment.
However, in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239,127 L.Ed.2d 583 (1994), the United States Supreme Court modified its holding in Cage. The Court stated that while it does not condone the use of the above words in a reasonable doubt instruction, these words do not automatically render an instruction unconstitutional if "taken as a *Page 839 
whole, the instructions correctly conveyed the concept of reasonable doubt to the jury" and did not define reasonable doubt "so as to lead the jury to convict on a lesser showing than due process requires."
Cage and Victor apply to erroneous reasonable doubt instructions by the trial court. The appellant does not argue that the trial court's instructions on reasonable doubt were erroneous. The appellant points to two isolated references to "substantial" doubt and "moral certainty" during the district attorney's opening statement and closing argument. These comments do not violate the holdings in Cage and Victor.
The appellant next argues that the district attorney, by telling the jury that intent to kill can be presumed by use of a pistol, misstated the law on intent and improperly shifted the burden of proof to the appellant. He contends that this statement created a mandatory presumption and that that presumption violated the Due Process Clause. " 'It is well settled that intent may be presumed from the use of a deadly weapon and the character of the assault.' " Oryang v. State,642 So.2d 989 (Ala.Cr.App. 1994), quoting Free v. State,495 So.2d 1147, 1158 (Ala.Cr.App. 1986). Also, the district attorney has wide latitude to argue legitimate inferences and reasonable impressions from the evidence in his arguments to the jury. Wright v. State, 641 So.2d 1274, 1282 (Ala.Cr.App. 1993). We find no plain error in the district attorney's argument.
The appellant next argues that the district attorney argued facts not in evidence. Dr. Joseph Embry, the state medical examiner, testified that he performed an autopsy on Ralph Swain. Embry stated that Swain died from a gunshot wound to the head. Embry also testified that he saw evidence of other trauma to Swain's face and head. On cross-examination, Embry acknowledged that the head injuries could have been caused by falling after being shot. However, on redirect examination Embry testified that the injuries could have been caused by being struck in the face. Embry further stated that there was no way he could tell exactly what had caused the injuries.
The district attorney argued during closing argument that Swain's head injuries were probably caused by the appellant. As we stated above, the district attorney is allowed to argue legitimate inferences from the evidence. Wright, 641 So.2d at 1282. Based on Dr. Embry's testimony, this comment was a legitimate inference.
The appellant next argues that the district attorney presented improper victim impact evidence during his closing argument in the guilt phase. We note that the appellant did not object to this evidence at trial; thus, we must review the district attorney's statements under the plain error standard. The portion of the closing argument that the appellant challenges reads as follows:
 "Who is in that apartment? Who is in that apartment to see what happened? Who is in that apartment that goes up to Janice? Kenea. She came in and told you. She is also part of this modern American nightmare, ladies and gentlemen. She lost her momma and daddy on that day.
". . . .
 "Ralph Swain and Janice died just a few feet apart. Just a matter of feet. I submit to you that they died without somebody to hold their hand or to wipe their brow."
The Alabama Supreme Court recently stated in Ex parte Rieber,663 So.2d 999, 1006 (Ala.), cert. denied, 516 U.S. 995,116 S.Ct. 531, 133 L.Ed.2d 437 (1995):
 "We caution prosecutors that the introduction of victim impact evidence during the guilt phase of a capital murder trial can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the guilt or innocence of the defendant based on the admissible evidence and the applicable law."
(Emphasis added.)
The evidence of the appellant's guilt in this case was overwhelming. We cannot see how these isolated statements in the state's closing argument affected the outcome of the trial or otherwise prejudiced the appellant. *Page 840 
 XII
The appellant next contends that the trial court denied him a fair trial because, he says, several of the court's jury instructions were misleading and improper. We note that the appellant did not object to any of the court's instructions as required by Rule 21.2, Ala. R.Crim.P. Therefore, we must review the instructions under the plain error standard of Rule 45A, Ala.R.App.P. "[T]he plain error doctrine should only be applied to particularly egregious errors which seriously affect the fairness and integrity of the judicial proceedings."Johnson v. State, 620 So.2d 679, 701 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709 (Ala. 1993).
The appellant first argues that the trial court's instruction on the lesser included offense of felony murder, §13A-6-2(a)(3), Code of Alabama 1975, was misleading because, he says, the instruction implied that intent was not an element of felony murder. "A felony-murder is committed when a person commits or attempts to commit one of several enumerated felonies and in the course of or in furtherance of the crime or in flight from the crime, he causes another person's death."Johnson, 620 So.2d at 701. Therefore, felony murder does not require intent to kill; the only intent necessary is the intent to commit the underlying felony. 620 So.2d at 701; Ex parteBates, 461 So.2d 5, 7 (Ala. 1984).
The trial court correctly instructed the jury that felony murder required that the appellant have caused the victim's death while committing burglary in the first degree. He further instructed that burglary required intent to unlawfully enter or remain in a dwelling as well as the intent to commit a crime therein. The trial court did not err in its felony murder instruction.
The appellant next argues that the trial court's instruction on one count of capital murder was misleading. One count charged the appellant with murder made capital because it was committed during a burglary in the first degree, a violation of § 13A-5-40(a)(4), Code of Alabama 1975. Burglary in the first degree requires intent to commit a crime within the dwelling that was unlawfully entered or in which the defendant unlawfully remained. § 13A-7-5, Code of Alabama 1975. The appellant contends that the instruction was erroneous because the court stated that the appellant must have "knowingly and unlawfully entered or remained in the dwelling of Janice Arvilla Morris" and must have "acted with intent to commit a crime of [b]urglary in the [f]irst [d]egree therein." He argues that this instruction led the jury to believe that it could convict him of capital murder by proving only that he had intent to commit a burglary.
When reviewing jury charges, the entire charge must be construed as a whole and the language of the charge must be given a reasonable construction, not a strained and unreasonable one. Carroll v. State, 599 So.2d 1253, 1270
(Ala.Cr.App. 1992), aff'd, 627 So.2d 874 (Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554, reh'g denied, 511 U.S. 1047, 114 S.Ct. 1582, 128 L.Ed.2d 224 (1994). Viewed as a whole, the instructions were not misleading. In the same instruction the court instructed the jury that it must find that the appellant intended to kill Janice Morris in order to convict him for capital murder.
 XIII
The appellant next contends that the trial court erred by not compelling the state to reveal an "apparent agreement" pursuant to which Stanley Russell would testify against the appellant in return for immunity from prosecution. Stanley Russell testified that on the Saturday after the murders, the appellant came to his home in Talladega County. There is no evidence in the record of any such agreement and the appellant did not raise this issue in the trial court. This court cannot predicate error on matters not shown by the record; it cannot presume error from a silent record. Goodson v. State, 588 So.2d 509
(Ala.Cr.App. 1991).
 XIV
The appellant further contends that the court erred in allowing him to waive a separate sentence hearing for his attempted murder conviction. The following occurred: *Page 841 
 "The Court: Now is there any reason why you should not be sentenced on this attempted murder case at this time, Mr. George?
"Defendant: No, sir.
 "The Court: Do you waive the formal sentence hearing relative to this case?
 "Mr. Giddens [defense attorney]: Yes, sir, relative to the attempted murder."
Rule 26.6(b)(1), Ala.R.Crim.P., states that a sentencing hearing may be waived.
 "Unless the court has no discretion as to the penalty to be imposed and no power to suspend the execution of the sentence, the court shall conduct a sentencing hearing in all felony cases, unless waived by the parties with the consent of the court."
The record shows that the appellant waived his right to a sentencing hearing on his conviction for attempted murder. No error occurred here.
 PENALTY PHASE XV
The appellant alleges that the court erred in allowing the state to present certain additional evidence at the penalty phase, after he had been found guilty of capital murder and the sole issue remaining was what penalty should be imposed. He contends that this evidence was unlawfully received because, he says, it tended to present nonstatutory aggravating circumstances that prejudiced the jury against him and justified a sentence of death by electrocution. We agree and remand the case to the trial court for a new penalty phase proceeding.
In the penalty phase of the proceedings, the jury was shown two videotapes, which showed where the appellant lived in Delaware — a wooded area that looked like a garbage dump. He apparently lived in a trench in the earth under piles of debris. The entrance was covered by a battered piece of corrugated metal. Presumably he lived there winter and summer, heating the area with a stove made out of a 55-gallon metal drum. He had an electric generator that was not immediately apparent in the video. He had a water container and various camping items. He had a small television and a hand-held scanner. He had a survival armory; the video depicted a semi-automatic pistol, a 12-gauge shotgun, a spear gun, bow and arrows, a night stick, throwing stars, and a BB gun. This living area was in a filthy junky wooded area near the bank of a river. The overall impression was that the appellant's living conditions were subhuman. Also shown was a shirt bearing a shoulder patch, "New Castle County Delaware," indicating that he was employed by New Castle County.
During the guilt phase of the case, the state offered evidence that the accused had fled to Delaware, and the court charged the jury that it could consider this fact as evidencing a consciousness of guilt. Cf. Ex parte Weaver, 678 So.2d 284
(Ala. 1996) (The Alabama Supreme Court reversed the conviction because the court's instruction on flight was incomplete. The Court however, stated the following about the admission of flight evidence at the guilt phase of a capital case: "Although we recognize that prosecutors are generally given wide latitude in proving that an accused fled out of a consciousness of guilt, it is clear that flight evidence can be so untrustworthy . . . that the probative value of the evidence is outweighed by the prejudice it produces." 678 So.2d at 291.).
Evidence such as that offered by the state depicting the lifestyle of the accused had no probative value in this case. It appears that the sole purpose of presenting this evidence was to inflame the minds of the jurors and to "dehumanize" the appellant so that the jurors would feel less reluctance in taking his life.
Section 13A-5-45, Code of Alabama 1975, provides:
 "(c) At the sentence hearing [in capital case] evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to the aggravating and mitigating circumstances referred to in Sections 13A-5-49, 13A-5-51, and 13A-5-52."
(Emphasis added.)
Florida has addressed this question in relation to its corresponding statute, which is broader than Alabama's. Florida's statute *Page 842 921.141(1) reads in part: "In the [penalty] proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances." In Floyd v. State,569 So.2d 1225 (Fla. 1990), cert. denied, 501 U.S. 1259,111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991), the Florida Supreme Court stated:
 "To be admissible in the penalty phase, state evidence must relate to any of the aggravating circumstances. Trawick v. State, 473 So.2d 1235, 1240-41 (Fla. 1985), cert. denied, 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 669 (1986); Ellege [Elledge] v. State, 346 So.2d 998, 1001-02 (Fla. 1977); § 921.141(1), Fla.Stat. (1983). Flight was not an issue and it was error to admit this testimony."
569 So.2d at 1231.
The only argument offered by the state in support of this evidence is that it was offered to rebut evidence that the appellant suffered from a mental disease or defect when he committed the murders. Dr. Kathy A. Ronan, a psychologist at Taylor Hardin Secure Medical Facility in Tuscaloosa, testified that she had examined the appellant and stated that it was her opinion that the appellant had a "mixed personality disorder that had dependent, avoidant, passive-aggressive, paranoid, and perhaps schizotypal features." Dr. Ronan also testified that it was her opinion that the appellant had an "adjustment disorder with depression." Dr. Ronan further stated that she found no evidence that the appellant was insane.
The state presented two videotapes showing the area where the appellant was arrested. The same basic location and items were shown repeatedly in the video. The overall impact was to give the impression that the appellant was a "rogue male," alienated from the mainstream of society. It might very well have been be less difficult for a juror to impose the death penalty on a person who pursued such an alternative lifestyle.
The receipt of this evidence was not harmless. The United States Supreme Court in Chapman v. California, 386 U.S. 18,87 S.Ct. 824, 17 L.Ed.2d 705 (1967), defined harmless error. The United States Supreme Court stated:
 "In fashioning a harmless-constitutional-error rule, we must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one. . . .
 ". . . . We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 [(1965)]. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' Id., at 86-87, 84 S.Ct. at 230. . . . Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt.
While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard." *Page 843 
Chapman, 386 U.S. at 23-24, 87 S.Ct. at 827-28. (Footnotes omitted; emphasis added.)
Further, the jury's vote at the penalty phase was 10 in favor of imposition of the death penalty and 2 in favor of life imprisonment without parole, the minimum number that can recommend the death penalty. See § 13A-5-46(f), Code of Alabama 1975. Under the circumstances, the admission of this evidence was not harmless beyond a reasonable doubt. We agree with the United States Supreme Court:
 "The penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."
Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978,2991, 49 L.Ed.2d 944 (1976). The appellant must be given a new penalty phase hearing.
For the foregoing reasons, this cause is due to be remanded to the Circuit Court for Talladega County so that a new penalty phase hearing can be held. Not only must a new penalty hearing be held, but the trial court must evaluate its imposition of the death penalty after it considers the advisory decision of the jury at the new penalty phase hearing. Due return should be filed in this court no later than 126 days from the date of this opinion.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED;
AFFIRMED IN PART; REVERSED IN PART;
REMANDED WITH DIRECTIONS.
STATE'S APPLICATION FOR REHEARING OVERRULED,
STATE'S RULE 39(k) MOTION DENIED.
PATTERSON and McMILLAN, JJ., concur.
COBB, J., concurs in part and dissents in part with opinion in which LONG, J., joins.