Larry Donald George was convicted of two counts of capital murder and one count of attempted murder.[1] The jury recommended a sentence of death on the capital murder conviction, by a vote of 10 to 2, and life imprisonment on the attempted murder conviction. After weighing the only aggravating circumstance it found to exist (that the murder was committed during a burglary, Ala. Code 1975, § 13A-5-49(4)) and the only mitigating circumstance it found to exist (that George had no significant history of past criminal activity, § 13A-5-51), the trial court sentenced George to death on the capital murder charge and to life imprisonment on the attempted murder charge. The Court of Criminal Appeals affirmed George's capital murder conviction, but granted him a new sentencing hearing before a newly empaneled jury, because, it held, the evidence presented by the State during the penalty phase presented a nonstatutory aggravating circumstance that may have prejudiced the jury against George and justified a sentence of death by electrocution. The Court of Criminal Appeals wrote in its opinion:
 "In the penalty phase of the proceedings, the jury was shown two videotapes, which showed where [George] lived in Delaware — a wooded area that looked like a garbage dump. He apparently lived in a trench in the earth under piles of debris. The entrance was covered by a battered piece of corrugated metal. Presumably he lived there winter and summer, heating the area with a stove made out of a 55-gallon metal drum. He had an electric generator that was not immediately apparent in the video. He had a water container and various camping items. He had a small television and a hand-held scanner. He had a survival armory; the video depicted a semi-automatic pistol, a 12-gauge shotgun, a spear gun, bow and arrows, a night stick, throwing stars, and a BB gun. This living area was in a filthy junky wooded area near the bank of a river. The overall impression was that [George's] living conditions were subhuman. Also shown was a shirt bearing a shoulder patch, 'New Castle County Delaware,' indicating that he was employed by New Castle County.
". . . .
 "Evidence such as that offered by the state depicting the lifestyle of the accused had no probative value in this case. It appears that the sole purpose of presenting this evidence was to inflame the minds of the jurors and to 'dehumanize' [George] so that the jurors would feel less reluctance in taking his life.
". . . .
 "The only argument offered by the state in support of this evidence is that it was offered to rebut evidence that [George] suffered from a mental disease or defect when he committed the murders. Dr. Kathy A. Ronan, a psychologist at Taylor Hardin Secure Medical Facility in Tuscaloosa, testified that she had examined [George] and stated that it was her opinion that [George] had a 'mixed personality disorder *Page 846 
that had dependent, avoidant, passive-aggressive, paranoid, and perhaps schizotypal features.' Dr. Ronan also testified that it was her opinion that [George] had an 'adjustment disorder with depression.' Dr. Ronan further stated that she found no evidence that [George] was insane.
 "The state presented two videotapes showing the area where [George] was arrested. The same basic location and items were shown repeatedly in the video. The overall impact was to give the impression that [George] was a 'rogue male,' alienated from the mainstream of society. It might very well have been less difficult for a juror to impose the death penalty on a person who pursued such an alternative lifestyle."
George v. State, 717 So.2d 827, 841-42 (Ala.Crim.App. 1996).
Judge Cobb, joined by Judge Long, dissented from that part of the opinion remanding the case for a new sentencing hearing. She wrote:
 "No Alabama authority supports the majority's decision to remand.
 "I agree with the State's argument that the evidence at issue here (the presentation of videotapes demonstrating the lengths to which [George] went to avoid detection and capture) was admissible as proper rebuttal to [George's] evidence of his extreme emotional disturbance presented during the penalty phase of these proceedings. Dr. Kathy A. Ronan, a psychologist, testified for [George], stating that although [George] did not suffer from a 'major psychiatric illness,' he was unstable, and suffered from depression, perceptual aberrations, and a 'mixed personality disorder' exhibiting 'dependent, avoidant, passive-aggressive, paranoid, and perhaps schizotypal features.' Clearly, [George] offered this evidence in mitigation under § 13A-5-51(2), Ala. Code 1975, which reads, 'The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.'
 "The State may properly rebut evidence of mitigating circumstances. See McWilliams v. State, 640 So.2d 982, 988-991 (Ala.Cr.App. 1991), aff'd in part, remanded in part, 640 So.2d 1015 (Ala. 1993). In fact, once the defendant presents mitigation evidence, the burden shifts to the State to disprove the factual existence of the defendant's mitigating circumstance by a preponderance of the evidence. § 13A-5-45(g), Ala. Code 1975. The State attempted to rebut the evidence offered by [George] of extreme emotional disturbance by presentation of the videotape, which showed the methodical and calculating way [George] had eluded his captors. Rather than 'dehumanizing' [George] as the majority opinion suggests, this rebuttal evidence was offered to show that [George] was not emotionally disturbed to any appreciable degree. It was offered to show that, in fact, [George] was extremely clever and calculating about ensuring his safety and seclusion.
 "In addition, the trial judge instructed the jury that it was to consider only the one aggravating circumstance relied on by the prosecution and stated that it could 'not consider any aggravating circumstance other than the aggravating circumstance of which I have instructed you.'* (R.624.)
"Section 13A-5-45(d), Ala. Code 1975, states:
 " '(d) Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama.'
 ". . . Hallford [v. State, 548 So.2d 526
(Ala.Crim.App. 1988), aff'd, 548 So.2d 547, cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989)], stands for the proposition that the scope of rebuttal as to a mitigating factor is not limited to a very narrowly tailored subject matter. As *Page 847 
§ 13A-5-45(d) plainly states, any evidence that is probative and relevant to sentencing is properly presented in a capital sentencing hearing.
717 So.2d at 843-44. The State petitioned for certiorari review, which we granted.
The State maintains that the evidence it offered at the penalty phase was not offered for the sole purpose of proving nonstatutory aggravation, as the Court of Criminal Appeals held in the majority opinion. Rather, the State says, it was offered to rebut the evidence George had offered in mitigation — evidence intended to indicate that he was mentally unstable when he committed the capital offenses for which he was convicted; the State says its evidence was offered to establish that George was not mentally unstable, but rather that he was, in fact, extremely clever and calculating, enough so that he had been able to elude law enforcement authorities for six years. According to the State, it argued only one aggravating circumstance in its closing argument at the penalty phase (that the murders were committed during a burglary), and the trial court instructed the jury as follows regarding that one aggravating circumstance: "You may not consider any aggravating circumstance other than the aggravating circumstance of which I have instructed you. . . ." Therefore, says the State, the jury and the trial court clearly understood that the evidence the State presented at the penalty phase was offered to rebut Dr. Ronan's testimony as to mental instability, not to prove a nonstatutory aggravating circumstance.
George maintains that the State's only evidence offered during the penalty phase pertained to the details surrounding his flight and his subsequent apprehension, which, he says, were not relevant to the one aggravating circumstance that the State alleged.
At the penalty phase of the trial, George called as witnesses two of his sisters and Dr. Ronan, the psychologist. George's sisters were called to testify first. They testified that George had had a relatively normal life (e.g., that he was a friendly person; that he did not get into trouble when he was growing up; that he had been a good student; and that he had graduated from high school) and they asked the jury to spare George's life and to sentence him to life imprisonment without the possibility of parole. When the sisters finished testifying, George told the trial court that his final witness, Dr. Ronan, had not arrived and would not arrive for several hours. Because Dr. Ronan was at that moment unavailable, the State requested to be allowed to proceed with its case and present its witnesses to rebut the psychological mitigation evidence to be elicited from Dr. Ronan. George did not object to the State's request to proceed and, therefore, the trial court allowed the State to present its rebuttal evidence out of turn. The State presented testimony from one investigator and two police officers about what George did after he had committed the capital offense (specifically, how he lived during the time he was trying to elude the police) and videotapes portraying the campsite where George surrendered.
Dr. Ronan's testimony was introduced to prove the mitigating circumstance that "the capital offense was committed while [George] was under the influence of extreme mental or emotional disturbance." Ala. Code 1975, § 13A-5-51(2). She testified that George was emotionally unstable, although not in the sense of having a major psychiatric illness. She further testified that George suffered from a mixed personality disorder that had dependent, avoidant, passive-aggressive, paranoid, and, perhaps, schizotypal features; that when she saw him he was suffering from an adjustment disorder with depression; and that, in her opinion, in times of extreme emotional distress George would lapse into more disorganized thoughts. According to Dr. Ronan, on those occasions George's "logic may not be what it normally is" and "[h]e may even have some perceptual aberrations like thinking that maybe there are voices or things like that."
To rebut that evidence, the State offered testimony about George's behavior after he committed the capital offenses for which he *Page 848 
was convicted — testimony about locating and arresting George in Delaware and about his living conditions at the time he was captured. It introduced that evidence to rebut the evidence George offered in mitigation that he was mentally unstable when he committed the capital offenses and to take away from the horror of the crimes; it offered that evidence to establish George's consciousness of guilt — that he was aware of what he had done — and his attempts to avoid detection. In its closing argument, while asserting that the aggravating circumstance outweighed the mitigating circumstance, the State stated:
 "That's the facts of what he did, and his awareness, again I come back to it, is shown to you by the very fact that as soon as he did this, he ran. And he ran because he was conscious of his guilt. He was conscious and aware of what he had done and the horror of it.
 "And I submit to you, ladies and gentlemen, that set of facts, that aggravating circumstance not only outweighs but far outweighs any evidence that has been presented to you to show why this man over here should not receive the ultimate punishment in this case. I would suggest to you, ladies and gentlemen, that when you weigh this evidence, the aggravating circumstance far outweighs the mitigating circumstances. And that under the statute, having found that the aggravating circumstance outweighs the mitigating circumstance or circumstances, that the punishment this jury should recommend to [the trial court] should be death."
In McWilliams v. State, 640 So.2d 982, 991 (Ala.Cr.App. 1991), aff'd in part and remanded, 640 So.2d 1015 (Ala. 1993), the Court of Criminal Appeals recognized that when a defendant presents evidence placing his mental status at issue, as George did in this case, the State can properly rebut that evidence — that after a defendant presents mitigating evidence, the burden shifts to the State to disprove the existence of the mitigating factor by a preponderance of the evidence. See Dill v. State,600 So.2d 343, 362 (Ala.Crim.App. 1991), aff'd,600 So.2d 372, cert. denied, 507 U.S. 924, 113 S.Ct. 1293,122 L.Ed.2d 684 (1993), in which the Court of Criminal Appeals held: "In fact, the State . . . has a greater burden in disproving the existence of mitigating circumstances than the defendant has in introducing [evidence of] mitigating circumstances." See, also, Ala. Code 1975, § 13A-5-45(g), which provides as follows:
 "The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence."
From a thorough review of the record, we think it clear that the evidence the State presented at the penalty phase of the trial pertaining to where and how George was living when he was captured and returned to Alabama was offered to rebut the evidence of mental instability that he had offered in mitigation of the capital offenses for which he was convicted. This evidence was probative and relevant to the sentencing and, as Judge Cobb said in dissent, it was "offered to show that [George] was not emotionally disturbed to any appreciable degree" and "to show that, in fact, [George] was extremely clever and calculating about ensuring his safety and seclusion." 717 So.2d at 844. Although the trial court did not find emotional instability to be a mitigating circumstance, had the State not offered, or not been allowed to introduce, evidence of emotional stability to rebut the evidence George had presented to show emotional instability, the trial court might have found otherwise. The trial court properly admitted that evidence.
We reverse the Court of Criminal Appeals' judgment remanding the case for a new penalty phase hearing and remand the case to that court with instructions to reinstate the sentence of death.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
[1] After evading the police for six years, George was apprehended in Delaware as the result of an episode of the television showAmerica's Most Wanted, on which an account of this case was featured. Thereafter, he was convicted of two counts of murder made capital because two people were killed as the result of one course of conduct, Ala. Code 1975, § 13A-5-40(a)(10), and because the murders were committed during the course of a burglary, Ala. Code 1975, § 13A-5-40(a)(4).
* "The sole aggravating circumstance relied upon by the prosecution, which was that the capital crime was committed during the course of or in flight from a burglary, was specifically noted by the court during its instructions to the jury." *Page 849